## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MY INVESTMENTS LLC

                      Plaintiff,

        V.

STARR SURPLUS LINES INSURANCE
COMPANY

                      Defendant.

Case No. 1:23-CV-04229-VEC

## DEFENDANT STARR SURPLUS LINES INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

ROBINS KAPLAN LLP

Taylore Karpa Schollard (*pro hac vice*)
Email: tkarpa@robinskaplan.com
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone: 617-859-2708
Facsimile: 617-267-8288

Lee Ann C. Thigpen  (*pro hac vice*)
Email: lthigpen@robinskaplan.com
5760 I-55 North
Ste 300
Jackson, MS 39211
Telephone: 612-349-0191
Facsimile: 612-339-4181

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    RELEVANT FACTUAL BACKGROUND.......................................................... 1

III.    LEGAL STANDARDS ....................................................................................... 4

    A.    Summary Judgment Standard......................................................................... 4

    B.    Choice of Law Standard ................................................................................ 4

IV.    ARGUMENT ...................................................................................................... 5

    A.    Under New York law, the Choice of Law Provision is enforceable and controls, which should end the inquiry. ...................................................................................................... 5

        1.    Because New York law controls the assessment of the Choice of Law Provision, whether it conflicts with Louisiana law (which Starr disputes) should be irrelevant. .................................. 6

        2.    The Choice of Law Provision is not unenforceable for public policy reasons. ...................... 9

    B.    The Choice of Law Provision should not be deemed void under La. Rev. Stat, 22:868(A)(1) and (C). ...................................................................................................... 11

    C.    To the extent the Court decides that it must consider the "center of gravity" factors, which Starr disputes, that test supports application of New York law. ....................................... 15

V.    CONCLUSION ................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Coughlin*,
  64 F.3d 77 (2d Cir. 1995)......................................................................................4

*Askari v. McDermott, Will & Emery, LLP*,
  114 N.Y.S.3d 412 (2019)......................................................................................9

*B & A Demolition & Removal, Inc. v. Markel Ins. Co.*,
  941 F. Supp. 2d 307 (E.D.N.Y. 2013) ...............................................................13

*Berkley Assur. Co. v. MacDonald-Miller Facility Solutions, Inc.*,
  No. 19-CV-7627 (JPO), 2019 WL 6841419 (S.D.N.Y. Dec. 16, 2019)

*Berkley Assur. Co. v. MacDonald-Miller Facility Solutions, Inc.*,
  No. 19-CV-7627 (JPO), 2020 WL 1643866 (S.D.N.Y. Apr. 1, 2020) ...............5, 6, 7, 8

*Chicago Ins. Co. v. Borsody*,
  165 F. Supp. 2d 592 (S.D.N.Y. 2001).................................................................10

*Cohen v. Liberty Mut. Grp. Inc.*,
  380 F. Supp. 3d 363 (S.D.N.Y. 2019)...................................................................4

*Fay v. Oxford Health Plan*,
  287 F.3d 96 (2d Cir. 2002)....................................................................................4

*Fed. Ins. Co. v. Weinstein*,
  No. 18 CIV. 2526 (PAC), 2019 WL 1407455 (S.D.N.Y. Mar. 28, 2019) ...............4

*Feldman L. Grp. P.C. v. Liberty Mut. Ins. Co.*,
  819 F. Supp. 2d 247 (S.D.N.Y. 2011), aff'd, 476 F. App'x 913 (2d Cir. 2012)......11

*Forlastro v. Collins*,
  No. 07 CIV. 3288 (RPP), 2007 WL 2325865 (S.D.N.Y. Aug. 14, 2007) ...............4

*Granite Ridge Energy, LLC v. Allianz Glob. Risk U.S. Ins. Co.*,
  979 F. Supp. 2d 385 (S.D.N.Y. 2013)...................................................................6

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
  313 U.S. 487 (1941)...........................................................................................4, 8

*MacLaren Eur. Ltd. v. ACE Am. Ins. Co.*,
  908 F. Supp. 2d 417 (S.D.N.Y. 2012), aff'd, 545 F. App'x 50 (2d Cir. 2013)......15, 16

*Ministers & Missionaries Benefit Bd. v. Snow*,
    26 N.Y.3d 466 (2015) ...................................................................................5, 7, 9

*N. Am. Elite Ins. Co. v. Space Needle, LLC*,
    159 N.Y.S.3d 396 (1st Dept. 2021) ......................................................................7

*NEM Re Receivables, LLC v. Fortress Re, Inc.*,
    173 F. Supp. 3d 1 (S.D.N.Y. 2016) ......................................................................4

*New York ex rel. Spitzer v. Saint Francis Hosp.*,
    94 F. Supp. 2d 423 (S.D.N.Y. 2000) .................................................................12

*Schwartz v. Twin City Fire Ins. Co.*,
    492 F. Supp. 2d 308 (S.D.N.Y. 2007)................................................................15

*Wausau Bus. Ins. Co. v. Horizon Admin. Servc. LLC*,
    803 F. Supp. 2d 209 (E.D.N.Y. 2011) ...............................................................15

*Williams & Sons Erectors v. South Carolina Steel*,
    983 F.2d 1176 (2d Cir.1993)................................................................................4

*Willis Re Inc. v. Herriott*,
    550 F. Supp. 3d 68 (S.D.N.Y. 2021)................................................................5, 9

*Yankee Caithness Joint Venture, L.P. v. Planet Ins. Co.*,
    No. 94CIV.8939(KMW)(JCF), 1996 WL 426359 (S.D.N.Y. July 30, 1996) ...................6, 10

## Statutes

28 U.S.C § 1404(a) ........................................................................................................2

N.Y. General Obligation Law § 5-1401....................................................................5, 6, 7, 8

La. Rev. Stat. § 22:868....................................................................................1, 6, 11, 13

Wash. Rev. Code Section 48.18.200.......................................................................................8

## Rules

Fed. R. Civ. P. 56...........................................................................................................4

## Other Authorities

Restatement on Conflict of Laws § 193.......................................................................15

Restatement (Second) of Conflict of Laws.......................................................................9

## I.    <u>INTRODUCTION</u>

Before the Court is the question of whether Louisiana or New York substantive law should apply to this insurance coverage action. New York choice of law principles (applicable here) make the analysis and answer rather straightforward—New York law applies because the policy of insurance issued to Plaintiff, My Investments LLC ("Plaintiff") by Defendant, Starr Surplus Lines Insurance Company ("Starr") contains an enforceable choice of law provision that selects New York law.

Plaintiff argues that Louisiana law should apply, focusing nearly all of its energy on trying to prove that the choice of law provision contained in Starr's policy which selects New York law is void and unenforceable because it is purportedly "prohibited" by La. Rev. Stat. § 22:868(A)(1) and (C).   New York courts have upheld New York choice of law provisions in similar circumstances. Moreover, La. Rev. Stat. §22:868 has no application to the subject policy. The statute only applies to "insurance contract[s] delivered or issued for delivery in" Louisiana.  There is no admissible evidence that the policy was "delivered or issued for delivery in" Louisiana, and, rather, the evidence put forward here suggests that the policy was delivered in New York.

Therefore, the Court should deny Plaintiff's motion and hold that the Choice of Law clause in the policy is enforceable and New York law applies to this dispute. In the alternative, if the Court is inclined to grant Plaintiff's motion, Starr requests that such ruling be deferred so as to give Starr an opportunity to take reasonable discovery on the factual issues implicated by Plaintiff's motion, as discussed herein.

## II.    <u>RELEVANT FACTUAL BACKGROUND</u>

Starr is a Texas corporation with its principal place of business in New York. *See* Defendant Starr Surplus Lines Insurance Company's Corporate Disclosures filed on April 20, 2023 (Doc.

16). My Investments, LLC is a limited liability company organized under the laws of Mississippi and whose members are domiciled in Louisiana and Mississippi. *See* Statement of Material Facts ("SOF") at <u>Exhibits 3</u> and <u>4</u>.

In the subject insurance coverage lawsuit, Plaintiff alleges that Hurricane Ida caused damage to eight properties located in Louisiana. Doc. No. 9 at 2-4. My Investments seeks to recover for various losses allegedly caused by such damage under Policy No. SLSTPTY11503121 ("Policy"), which was issued by Starr. Doc. 9 at 2-6, 9; Doc. 56-2 at 5.

Plaintiff commenced this action in the United States District Court for the Eastern District of Louisiana. The matter was transferred to the Southern District of New York on May 19, 2023 by the Eastern District of Louisiana pursuant to the forum selection clause contained in the Policy and 28 U.S.C. § 1404(a). *See* Doc. 30. After the action was transferred, Plaintiff petitioned the Fifth Circuit Court of Appeals for "mandamus relief based on its assertion that forum selection clauses in surplus lines insurance policies violate Louisiana public policy." *See* Starr's Additional Statements of Material Fact ("ASOF") at <u>Exhibit 7</u>. This petition for a writ of mandamus was denied on July 14, 2024. *Id*.

The Policy is a surplus lines policy which names "My Investments LLC et al" as the named insured and lists its address as 45 Louis Prima Drive, Covington, Louisiana 70433. Doc. 56-2 at 5. The Policy was renewed from a previous surplus lines policy issued to Plaintiff. *Id*.; Declaration of Hannah (Elizabeth) Trott ("Dec. of Trott") at ¶ 8.

Kipala Webb and Mandy Stewart of Southern Hospitality Underwriters ("SHU"), together with Nancy Warnock, Don Thames, and/or others at Hennessey, Thames & Leavitt Insurance Agency ("Hennessey Agency"), managed and handled the procurement of the Policy from Starr. *See* ASOF at ¶¶ 22-24. SHU is a nationwide commercial insurance program administrator

currently located in Georgia, with previous and/or alternative locations in Alabama. *Id*. at ¶ 22. Hennessey Agency is an insurance agency located in Mississippi. *Id*. at ¶ 23. Webb, Stewart, Warnock, and/or others at SHU and the Hennessey Agency received and reviewed the renewal documents and quotes issued by Starr in connection with the Policy, requested revisions to certain aspects of coverage, and ultimately instructed Starr to bind coverage. *See* Dec. of Trott, including Exhibits A, B, and D to same. On October 4, 2021, Cameron Marte, an underwriting assistant at Starr Specialty Lines Insurance Agency, LLC – A Member of Starr Insurance Companies located at 399 Park Avenue, New York, New York 10022, delivered the Policy to Webb and Stewart, who were located in Alabama. *Id*. at ¶ 3.

The Policy contains a "Choice of Law and Choice of Venue" provision (hereinafter, "Choice of Law Provision") with mandatory forum-selection and choice-of-law clauses. *See* Dec. of Trott at Exhibit F at Form No. PR 002 (02/19), p. 9 of 16. This provision requires that New York law be applied to any dispute arising out of the Policy:

> e.  Choice of Law and Choice of Venue:
>
> No suit, action, or proceeding regarding this POLICY for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this POLICY. The COMPANY agrees that any suit, action, or proceeding against it for recovery of any claim under this POLICY shall not be barred if commenced within the time prescribed in the statutes of the State of New York. Any suit, action, or proceeding against the COMPANY must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York. *The laws of the State of New York shall solely and exclusively be used and applied in any such suit, action, or proceeding, without regard to choice of law or conflict of law principles*.

*Id*. (emphasis added).

Plaintiff now moves for partial summary judgment on the sole issue of choice of law pursuant to the Court's Order dated August 7, 2023.

## III.    LEGAL STANDARDS

### A.    Summary Judgment Standard

"Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002) (citing Fed. R. Civ. P. 56). The moving party bears the initial burden of proof. *See* Fed. R. Civ. P. 56; *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 173 F. Supp. 3d 1, 5 (S.D.N.Y. 2016). "In considering a summary judgment motion, the Court must 'view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party.'" *Cohen v. Liberty Mut. Grp. Inc.*, 380 F. Supp. 3d 363, 375 (S.D.N.Y. 2019) (quoting *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (further citations omitted)).

In contract disputes, "[s]ummary judgment may be granted when the provisions of a contract convey a definite and precise meaning, absent any ambiguity." *Williams & Sons Erectors v. South Carolina Steel,* 983 F.2d 1176, 1183 (2d Cir.1993).

### B.    Choice of Law Standard

Where as here, the case has been transferred to the proper venue, "the transferee court must apply the choice of law analysis of the state in which the transferee court sits, as required by *Klaxon* [. . .].'" *Forlastro v. Collins*, No. 07 CIV. 3288 (RPP), 2007 WL 2325865, at \*2 (S.D.N.Y. Aug. 14, 2007) (citing *Klaxon Co. v. Stentor Electric Mfg. Co*., 313 U.S. 487, 496 (1941)). New York choice of law principles apply even if there is a conflict of law. *See e.g.*, *Fed. Ins. Co. v. Weinstein*, No. 18 CIV. 2526 (PAC), 2019 WL 1407455, at \*4–5 (S.D.N.Y. Mar. 28, 2019). Accordingly,

New York choice of law principles apply to the analysis of whether New York or Louisiana law will apply in this case.

## IV.    <u>ARGUMENT</u>

### A.    **Under New York law, the Choice of Law Provision is enforceable and controls, which should end the inquiry.**

In New York, where a dispute involves a contractual choice-of-law provision, that provision typically resolves the choice-of-law question in its entirety if the provision is deemed enforceable. *See Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 91–92 (S.D.N.Y. 2021). Whether the choice-of-law provision is enforceable is determined under New York law. *See Berkley Assur. Co. v. MacDonald-Miller Facility Solutions, Inc.*, No. 19-CV-7627 (JPO), 2019 WL 6841419, at *1-3 (S.D.N.Y. Dec. 16, 2019) ("*Berkley I*"), *reconsideration denied* No. 19-CV-7627 (JPO), 2020 WL 1643866, at *2 (S.D.N.Y. Apr. 1, 2020) ("*Berkley II*")). Under the *Ministers & Missionaries Benefit Bd. v. Snow* precedent (upheld by the Southern District of New York as "'unequivocal'" and having no exceptions), New York courts have held that if a choice-of-law provision is enforceable there should be no interest-balancing, "center of gravity" choice-of-law analysis at all—rather, the jurisdiction selected in the provision applies. *See Willis Re Inc.*, 550 F. Supp. 3d at 91-92 (stating that "'New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract, even if the contract . . . does not fall within General Obligation Law Section 5-1401,'" to promote efficiency and give effect to the intent of the parties) (quoting and discussing *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 474 (2015)) (collected cases); *Berkley II*, 2020 WL 1643866, at *2 (the position that the Court should conduct a conflict-of-laws analysis despite an enforceable choice-of-law provision selecting New York law "strains credulity and blinks common sense" and would "'frustrate the Legislature's purpose of encouraging a predictable contractual choice of New York commercial

law and, crucially, of eliminating uncertainty regarding the governing law.'"); *Berkley I*, 2019 WL 6841419, at *1-3.

Under New York General Obligations § 5-1401, a choice of law provision in a contract "covering" at least $250,000 will govern the "rights and duties [of the parties] in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. [. . .]." *See also Granite Ridge Energy, LLC v. Allianz Glob. Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 391 (S.D.N.Y. 2013) ("New York law provides that, [a]s a general matter, the parties manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored.") (internal quotations omitted). In the context of insurance contracts, the premium is used to determine the value of the transaction for purposes of this statute. *See Yankee Caithness Joint Venture, L.P. v. Planet Ins. Co.*, No. 94CIV.8939(KMW)(JCF), 1996 WL 426359, at *1–3 (S.D.N.Y. July 30, 1996). Here, the premium for the Policy exceeds $250,000. *See* Doc. 56-2 at 5. As does the value of the property insured. *See* Dec. of Trott at <u>Exhibit C</u>. Therefore, § 5-401 applies, the Choice of Law Provision in enforceable, and because it selects New York law as the law governing this dispute, New York substantive law should apply to this action. No further conflict-of-law analysis is needed or appropriate.

      1.    **Because New York law controls the assessment of the Choice of Law Provision, whether it conflicts with Louisiana law (which Starr disputes) should be irrelevant.**

Plaintiff argues that the Choice of Law Provision is unenforceable because it is allegedly void under Louisiana law, specifically as against La. R.S. § 22:868(A)(1). Starr disputes that its Choice of Law Provision is void under Louisiana law. *See infra* Section IV.B.  However, even assuming that is true, New York courts have held that whether a choice-of-law provision conflicts with or is void under a different state's law is irrelevant to and does not impact the enforceability

of the provision under New York law. *See Berkley II*, 2020 W 1643866 at *2 (holding that choice of law provision calling for application of New York law was not invalid because it was void under Washington law and that such "contention finds no support in New York law" which applied to determining the effectiveness of the provision and that insured's argument to the contrary constituted a "fundamental conceptual error"); *but see N. Am. Elite Ins. Co. v. Space Needle, LLC*, 159 N.Y.S.3d 396 (1st Dept. 2021) (distinguishing *Berkley I* and finding choice of law provision void as against WA law). As such, the fact that the Choice of Law Provision is enforceable under New York law should be deemed sufficient in this case.

The *Berkley Assur. Co. v. MacDonald-Miller Facility Solutions, Inc*. decisions provide an example of how some New York courts have addressed this issue. In that case the insured had a professional-liability policy from Berkley Assurance Company, among other insurers, which contained a choice of law provision selecting New York substantive law. *Berkley I*, 2019 WL 6841419 at *1. The insured was sued in Washington and after Berkley declined to provide a defense, the insured sued them in Washington. *Id*. Berkley filed a declaratory judgment action in New York seeking declaration that New York law governed the dispute and moved for a preliminary injunction to prevent the insured from further prosecuting its Washington suit. *Id*. at *2. The court held that New York substantive law governed pursuant to N.Y. Gen. Oblig. Law § 5-1401 since the case cleared the monetary threshold. *Id*. As such, the court specifically declined to engage in the "center of gravity" test, upholding the *Ministers* precedent. *Id*. The court rejected the insured's argument (similar to Plaintiff's argument here) that the choice of law provision in the policy was unenforceable because a highly similar Washington statute prohibited choice of law provisions selecting another state's law ("no insurance contract with sufficient ties to the state of

Washington 'shall contain any condition, stipulation, or agreement . . . requiring it to be construed according to the laws of any other state'") stating:

> [U]nder *Klaxon*, it is the choice-of-law regime of *New York*, not Washington, that controls the validity of the policy's choice-of-law clause. Thus, the controlling rule is section 5-1401 of New York's General Obligations Law, not section 48.18.200 of the Washington Code. And under section 5-1401, the policy's choice-of-law clause must be honored.
>
> The Court concludes that the choice-of-law clause will be enforced and that the substantive law of New York will govern.

*Id*. at *3 (emphasis in original) (internal citations omitted).

The court denied reconsideration of this holding on April 1, 2020. *Berkley II*, 2020 WL 1643866. The court again rejected the insured's argument that Washington law applied "because Washington state law invalidates such choice-of-law provisions, see Wash. Rev. Code Section 48.18.200(1), [and, therefore,] the policy's choice-of-law provision is 'null and void from inception.'" *Id*. at *1.  The court stated:

> [The insured] urges this Court to do precisely what New York's choice-of-law rules forbid. Under New York law, "[i]n the case of certain contracts" — like this one — "covering high-value transactions, a choice of law clause selecting New York law will be honored regardless of the contacts between the state and the transaction." New York enacted this statute because it feared that New York courts would not recognize "a choice of New York law [in certain contracts] on the ground that the particular contract had insufficient 'contact' or 'relationship' with New York." The New York legislature was concerned that "[a]s a result, parties would be deterred from choosing the law of New York in their contracts, and the Legislature was concerned about how that would affect the standing of New York as a commercial and financial center."

*Id*. (internal citations omitted).

Accordingly, under *Berkley I* and *Berkley II* (together with New York's strong precedent of upholding choice of law provisions), even if the Choice of Law Provision was void under or conflicted with Louisiana law (which Starr disputes), it could still be held enforceable under New York law and dictate that New York law applies to this action. Regardless, the Choice of Law is

not void under Louisiana law for the reasons discussed herein at Section IV.B. Therefore, Plaintiff's motion should be denied and the Court should find that New York law applies.

### 2. The Choice of Law Provision is not unenforceable for public policy reasons.

Plaintiff also appears to argue that the Choice of Law Provision is unenforceable because it is against public policy. Plaintiff's argument relies heavily on the contention that the Choice of Law Provision violates Louisiana public policy or is otherwise against public policy because it allegedly violates Louisiana law. But "[m]ore recent New York court decisions that discuss a public policy exception have overwhelmingly invoked the approach in *Welsbach and Brown & Brown* — that only New York public policy is relevant — not that in the Restatement."[1] *Willis Re Inc.*, 550 F. Supp. 3d at 96. As the court explained in *Willis Re Inc.*:

> This makes sense because relying on another state's public policy to override the intent of the contracting parties, à la the Restatement, requires the court to consider [f]irst, whether, in the absence of the choice of law provision, [the other states'] law would apply; [s]econd, whether the application of New York law would be contrary to a fundamental policy of [that other state]; and [t]hird, whether the other state has a materially greater interest than New York in the determination of [the] dispute. In other words, accepting [that] argument would require the Court to apply a traditional New York conflict-of-law analysis to determine whether California law would govern in the absence of the choice-of-law provision and, if so, to then consider whether California's fundamental public policy would be violated — exactly the type of analysis *Ministers & Missionaries* rejected.

*Id*. at 96 (internal citations and quotations omitted).

In New York, "[c]ourts will not enforce agreements where the chosen law violates some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Askari v. McDermott, Will & Emery, LLP*, 114 N.Y.S.3d 412, 428 (2019) (internal quotations omitted). Under the *Welsbach and Brown & Brown* standard, a public

---

[1] "To be sure, some courts, following the Restatement (Second) of Conflict of Laws, have stated that New York courts may refuse to enforce contractual choice-of-law provisions where 'application of the chosen law would violate fundamental public policy of another jurisdiction with materially greater interests in the dispute.' [. . .] But these decisions largely predate *Ministers & Missionaries*." *Willis Re Inc.*, 550 F. Supp. 3d at 96 (internal citations omitted).

policy exception is "reserved for those foreign laws that are truly obnoxious." *Id*. (internal quotations omitted). "The party seeking to invoke the exception bears a heavy burden of proving that application of [the chosen] law would be offensive to a fundamental public policy of this State." *Id*. (internal quotations omitted).

Plaintiff has not met this burden. Particularly to the extent Plaintiff's Louisiana-statute based arguments are set aside. The Choice of Law Provision is part of a commercial contract that was negotiated between two sophisticated commercial entities. Plaintiff is sophisticated business entity owning at least 25 various locations of hotels and/or other properties across multiple states. *See* Dec. of Trott at Exhibit C; Exhibit F. It retained a team of highly experienced insurance industry professionals, including an insurance agency and underwriting administrator, to oversee and manage the procurement of coverage. *See generally* Dec. of Trott, including Exhibits A, B, and D. Those professionals reviewed the quotes provided by Starr and requested revised quotes and/or revised terms of coverage before binding coverage. *See id*. Further, because the Policy was a renewal, Plaintiff should have been familiar with the provisions of Starr's insurance product (including the Choice of Law Provision) and was free to secure alternate coverage with different terms elsewhere. *See Chicago Ins. Co. v. Borsody*, 165 F. Supp. 2d 592, 599 (S.D.N.Y. 2001) (an insured is "presumed to have read [their] policy and to know its terms and conditions). Indeed, Plaintiff continues to insure its risks with Starr. Dec. of Trott at ¶ 10. There is no injustice to enforcing the Choice of Law Provision.

Furthermore, the fact that Louisiana has a bad faith statute and allows for recovery of certain penalties against insurers should not, on its own, make the choice of New York law unfair. *See e.g., Yankee Caithness Joint Venture, L.P. v. Planet Ins. Co.*, No. 94CIV.8939(KMW)(JCF), 1996 WL 426359, at *1–3 (S.D.N.Y. July 30, 1996) (holding that NY law applied under choice of

law analysis even though NV law (the other possible state) would allow an insurer to be subject to punitive damages).[2] At most, Plaintiff's claims of injustice are speculative at this juncture where Plaintiff has not demonstrated and there is no finding or judgment that Starr engaged in any bad faith conduct whatsoever. Indeed, Plaintiff does not even have a finding that additional monies are owed to it, or that Starr breached its contractual obligations.

Regardless, the Choice of Law Provision is not against public policy because it does not violate any Louisiana law for the reasons described below in Section IV.B.

**B.    The Choice of Law Provision should not be deemed void under La. Rev. Stat, 22:868(A)(1) and (C).**

For the reasons discussed above, it is Starr's position that the Court need not consider this issue to resolve the choice of law question and find that New York law applies. Nonetheless, Starr addresses Plaintiff's argument that the Choice of Law provision in the Policy is unenforceable because it is void under La. Rev. Stat. 22:868(A)(1) and (C). *See* Doc 55 at 13-14.

Under these statutory provisions, an insurance "contract delivered or issued for delivery" in Louisiana and covering "subjects located, resident, or to be performed in" Louisiana may not: "(1) Requir[e] it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country."  Therefore, for the statute to apply, the Policy must have been "delivered or issued for delivery" in Louisiana.

Plaintiff's motion contains no facts concerning the actual delivery/provision of the Policy to Plaintiff. *See generally* Doc. 55.[3] Rather, Plaintiff claims that the following facts show that the

---

[2] *But see e.g., Feldman L. Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 256 (S.D.N.Y. 2011), aff'd, 476 F. App'x 913 (2d Cir. 2012).
[3] Though not argued in Plaintiff's Motion (or even cited to), the Declaration of My Investments LLC states that "The Policy was delivered to [Yogesh "Chris" Patel, the managing member of Plaintiff] via e-mail at [his] office in Covington, Louisiana." Doc. 56-1 at ¶ 6. The email referred to is not provided. That email is the best evidence of its

Policy was delivered in Louisiana: (a) the Policy lists Plaintiff's address in Louisiana, (b) Plaintiff

paid Louisiana sales tax when it purchased the Policy, and (c) "the policy was signed by Edgar J.

Campo, Jr., whose signature the policy describes as 'Signature of Licensed Louisiana Surplus

Lines Broker or Authorized Representative." Doc. 55 at 14. None of these facts are dispositive of

"delivery." Moreover, even if relevant to the delivery question, Plaintiff does not cite to and has

not submitted any evidence showing that it paid Louisiana sales tax when it purchased the Policy.

*See* Doc. 55 at 14. In addition, there is no indication that the Policy was signed by Edgar J. Campo

or that it contains the language quoted above regarding his signature. *See generally* Exhibit 1.

Indeed, the Policy was signed by Timothy J. Drag, an employee of Starr Companies. *See* Dec. of

Trott at Exhibit F at Declaration pg. 2.

On the other hand, Starr provides evidence that on October 4, 2021, Cameron Marte, an

underwriting assistant at Starr Specialty Lines Insurance Agency, LLC – A Member of Starr

Insurance Companies located at 399 Park Avenue, New York, New York 10022, delivered the

Policy to Kipala Webb and Mandy Stewart (who were located in Alabama) by email. *See* Dec. of

Trott at ¶ 3 and Exhibit B. As stated above, Webb and Stewart were employees of SHU (a

commercial insurance program administrator) and worked with Nancy Warnock, Don Thames,

and/or others at Hennessey, Hennessey Agency, to handle the procurement of the Policy from

Starr. *See* ASOF at ¶ 24.

At bottom, Plaintiff has not carried its burden of proving delivery in Louisiana through

non-disputed, admissible facts. Rather, the only admissible facts on this issue are those presented

---

existence and contents. Accordingly, paragraph 6 of the Declaration of My Investments LLC should be disregarded
as inadmissible. *See New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000)
(granting motion to strike statements in an affidavit concerning correspondence not attached to the affidavit because
the "letters themselves are the best evidence of their contents. See Fed. R. Evid. 1001-03" and where there was no
showing that the writings were unavailable).  Plaintiff otherwise has no evidence of the circumstances of delivery.

by Starr, which suggest delivery was effectuated in New York (or, at the very least, not Louisiana). *See e.g.*, *B & A Demolition & Removal, Inc. v. Markel Ins. Co.*, 941 F. Supp. 2d 307, 310-318 (E.D.N.Y. 2013) (finding that policy was considered delivered when provided to the wholesale broker/"go between" between the insurer, and stating that: "Courts in New York State have traditionally held that insurance brokers are deemed to be agents of the insured and not the insurer.").

Alternatively, there is a dispute regarding the facts surrounding delivery, including, but not limited to, how the insured received the Policy (if deemed different than Starr's provision of the Policy to Webb and Stewart); the nature and scope of the relationship between the insured and SHU and Hennessy Agency; and the instruction/direction/authority the insured provided to SHU and Hennessy Agency for procurement and binder of the Policy. S*ee B & A Demolition*, 941 F. Supp. 2d at 318 (the existence of an agency relationship can be a fact dependent) (citing Couch on Insurance 2d § 25:94 at 447–48 ("The question whether a broker is the agent for the insured or the insurer is ordinarily one of fact for determination by the jury, particularly when there is conflicting evidence.")). In any event, Plaintiff has not met its burden of proving that, to the extent relevant to the choice of law analysis, enforcement of the Choice of Law Provision violates La. R.S. § 22:868(A)(1).

Second, Plaintiff contends that the Policy "acknowledges" that it was delivered or issued in Louisiana. Doc. 55 at 14. The Policy does no such thing. In support of this argument, Plaintiff points to a single sentence from the Policyholder Notices section of the Policy: "This insurance policy is delivered as surplus lines coverage under the Insurance Code of the State of Louisiana." Doc. 55 at 14. This sentence means no more than what it says—the Policy is delivered as surplus lines coverage under the Insurance Code of the State of Louisiana, *i.e.*, the Policy is a surplus lines

policy/provides surplus lines coverage pursuant to the Insurance Code of the State of Louisiana. It does not comment on or constitute an admission as to *where* the Policy was actually "delivered," as that term is understood. Indeed, that conclusion is at odds with and is belied by the fact that the Policyholders Notice section also states that the Policy: "is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law," "ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW," and "issued pursuant to Mississippi law covering surplus lines insurance." *Id*. at 12-14. Under Plaintiff's argument, the Policy was "delivered" in Louisiana, Alabama, Florida and/or Mississippi—which cannot be.

In addition, Plaintiff's argument is belied by clear language in the Policyholder Notices section informing My Investments that the Policyholder Notices do not alter the other provisions in the Policy and that the Policy language, which would include the Choice of Law provision controls:

> **Louisiana:**
>
> **NOTICE**
> This insurance policy is delivered as surplus lines coverage under the Insurance Code of the State of Louisiana[.] [. . .]
>
>            * * *
>
> **THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS YOUR LEGAL RIGHTS AND OBLIGATIONS.**
>
> **\*\*READ YOUR INSURANCE POLICY FOR COMPLETE POLICY TERMS AND CONDITIONS\*\***

*See* Exhibit 2 (Doc. 56-2) at 12-13 (emphasis in original). Indeed, the Policyholder Notices specifically informs Plaintiff that the language of the Policy, which would include the Choice of Law Provision, "controls [its] legal rights and obligations."

Because Plaintiff has not carried its burden of proving as a matter of law (or, alternatively, as a matter of law and undisputed fact) that the Policy was delivered in Louisiana, Plaintiff's motion should be denied.

**C.    To the extent the Court decides that it must consider the "center of gravity" factors, which Starr disputes, that test supports application of New York law.**

As stated, New York law prescribes that the Court need not engage in a "center of gravity" test where there is an enforceable choice of law provision, as there is here. However, should the Court disagree, Starr responds to Plaintiff's "center of gravity" argument.

Under the "center of gravity" test, "[f]or insurance contracts in particular, courts consider: 'the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business.'" *Id.* (quoting *Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 317 (S.D.N.Y. 2007); Restatement on Conflict of Laws § 193).

Where, as is the case here, the policy at issue insures risks located in two or more states, "[i]t is commonplace for courts applying New York choice-of-law rules to disregard (or at least discount) the location of the insured risk." *MacLaren Eur. Ltd. v. ACE Am. Ins. Co.*, 908 F. Supp. 2d 417, 424 (S.D.N.Y. 2012), aff'd, 545 F. App'x 50 (2d Cir. 2013) (*quoting Schwartz*, 539 F.3d at 152). Instead, the New York courts "substitute the principal location of the insured risk with the insured's domicile." *Wausau Bus. Ins. Co. v. Horizon Admin. Servc. LLC*, 803 F. Supp. 2d 209, 214 (E.D.N.Y. 2011) (internal quotations omitted).

Starr does not dispute that Plaintiff maintains its principal place of business in Louisiana. Plaintiff is domiciled in Mississippi. SOF and Response at ¶ 1. Although the Insured Locations all happen to be located in Louisiana (and the Policy insures other locations in Louisiana), the Policy also insures risks located in Mississippi, Alabama and Florida as well. Dec. of Trott at <u>Exhibit C</u>.

Starr is a Texas corporation with a principal place of business in New York. SOF Response at ¶ 2. Employees of Starr located in Georgia and New York received a request for a quote from, negotiated provisions with, received a request to bind coverage from, and/or otherwise worked with employees of SHU and Hennessey Agency to underwrite, issue and deliver the Policy. *See* Dec. of Trott at Exhibits A, B, and D; ¶ 7. SHU is currently located in Georgia, and had/has locations in Alabama. ASOF at ¶ 22. Hennessey Agency is located in Mississippi. *Id.* at ¶ 23. Following binder, the Policy was ultimately issued from Starr's office in New York. *See* Dec. of Trott at ¶ 3. Starr received the premium payment for the Policy from CRC Group located in Grapevine, Texas. *Id.* at ¶ 9.

To the extent there is no clear winning state, the Court should consider New York's interest in regulating insurers like Starr doing business in its state and issuing policies in its state and find that New York law applies. *See e.g.*, *MacLaren Eur. Ltd.*, 908 F. Supp. 2d at 424–26 (where the center of gravity factors did not point to one obvious jurisdiction, the court looked to the government interest of regulating insurance companies/brokers doing business in New York, finding that the most significant in that case).

To the extent the Court finds the above facts insufficient to determine New York law applies (to the extent the center of gravity test is employed which Starr contends is not necessary), Starr argues, in the alternative, that there is a dispute as to material facts bearing on this test. These facts include: (a) the circumstances of delivery, if not found to be New York based on Starr's evidence; (b) where the premiums were paid and received; (c) the domicile of Plaintiff and its members.

V.    <u>**CONCLUSION**</u>

For the above reasons, Starr respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment and instead find that New York law controls the disputes in this case. Alternatively, Starr requests that the Court deny Plaintiff's motion as there is a genuine issue of material facts. In the further alternative, if the Court is otherwise inclined to grant Plaintiff's motion, Starr requests that the ruling be deferred in order to give Starr an opportunity to take reasonable discovery as to the factual issues raised by Plaintiff's motion.

Respectfully submitted, this the 15th day of September, 2023.

ROBINS KAPLAN LLP

*/s/ Taylore E. Karpa Schollard*_____
Lee Ann C. Thigpen
(*Pro Hac Vice*)
ROBINS KAPLAN LLP
5760 I-55 North
Suite 300
Jackson, MS 39211
Telephone:  (612) 349-0191
lthigpen@robinskaplan.com

Taylore E. Karpa Schollard
(*Pro Hac Vice*)
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone:  (617) 267-2300
tkarpa@robinskaplan.com

***Attorneys for Defendant Starr Surplus Lines Insurance Company***

**<u>CERTIFICATE OF SERVICE</u>**

I, Taylore E. Karpa Schollard, hereby certify that on this day, I electronically filed the within document with the Clerk of the Court using the CM/ECF system that will send notification of such filing(s) to all counsel of record.  The document is available for viewing and downloading through the ECF system.

Dated:  September 15, 2023                    */s/ Taylore E. Karpa Schollard*
                                                                Taylore E. Karpa Schollard

18